**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 18-2183**

BELMORA LLC,

Plaintiff – Appellee,

v.

BAYER CONSUMER CARE AG, a Swiss Corporation; BAYER HEALTHCARE LLC, a Delaware Limited Liability Company,

Defendants – Consolidated Plaintiffs – Appellants,

v.

BELMORA LLC, a Virginia Limited Liability Company; JAMIE BELCASTRO, an individual,

Consolidated Defendants – Appellees,

and

DOES, 1 – 10, inclusive,

Consolidated Defendants.

-----------------------

UNITED STATES OF AMERICA

Amicus Supporting Appellant.

BELMORA LLC,

Plaintiff – Appellant,

v.

BAYER CONSUMER CARE AG, a Swiss Corporation; BAYER HEALTHCARE LLC, a Delaware Limited Liability Company,

Defendants – Consolidated Plaintiffs – Appellees,

v.

BELMORA LLC, a Virginia Limited Liability Company; JAMIE BELCASTRO, an individual,

Consolidated Defendants – Appellants,

and

DOES, 1 – 10, inclusive,

Consolidated Defendants.

Appeals from the United States District Court for the Eastern District of Virginia, at Alexandria.  Claude M. Hilton, Senior District Judge.  (1:14-cv-00847-CMH-JFA)

Argued:  October 26, 2020　　　　　　　　　　　　　Decided:  February 2, 2021

Before AGEE, FLOYD, and THACKER, Circuit Judges.

Affirmed in part, vacated in part, and remanded with instructions by published opinion. Judge Floyd wrote the opinion, in which Judge Agee and Judge Thacker joined.

**ARGUED:** Jessica Andrea Ekhoff, PATTISHALL, MCAULIFFE, NEWBURY, HILLIARD & GERALDSON LLP, Chicago, Illinois, for Appellants/Cross-Appellees. Lewis Yelin, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Amicus United States of America. Joel Geoffrey MacMull, MANDELBAUM SALSBURG, PC, New York, New York; Ronald David Coleman, DHILLON LAW GROUP, New York, New York, for Appellees/Cross-Appellants. **ON BRIEF:** Phillip Barengolts, Bradley L. Cohn, PATTISHALL, MCAULIFFE, NEWBURY, HILLIARD & GERALDSON LLP, Chicago, Illinois; Robert J. Shaughnessy, WILLIAMS & CONNOLLY LLP, Washington, D.C., for Appellants/Cross-Appellees. Craig C. Reilly, LAW OFFICES OF CRAIG C. REILLY, Alexandria, Virginia, for Appellees/Cross-Appellants. Joseph H. Hunt, Assistant Attorney General, Mark R. Freeman, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.; Thomas S. Krause, Solicitor, Christina J. Hieber, Associate Solicitor, Mary Beth Walker, Associate Solicitor, Benjamin T. Hickman, Associate Solicitor, UNITED STATES PATENT AND TRADEMARK OFFICE, Alexandria, Virginia; G. Zachary Terwilliger, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Amicus United States of America.

FLOYD, Circuit Judge:

This appeal arises out of an action brought by Bayer Consumer Care AG (Bayer) alleging that Belmora LLC (Belmora) engaged in unfair competition in violation of § 43(a) of the Lanham Act. The district court held that Bayer's § 43(a) claims were time-barred. Because the Lanham Act does not include a limitations period for § 43(a) claims, the district court borrowed the statute of limitations from the most analogous state law, declining to apply the equitable doctrine of laches to those claims.

For the reasons set forth below, we conclude that laches, rather than a statute of limitations, is the appropriate defense to Bayer's § 43(a) claims. We also conclude that the district court failed to consider whether Bayer's related state-law claims were subject to tolling. Accordingly, we vacate the district court's judgment on Bayer's § 43(a) and related state-law claims and remand for further proceedings consistent with this opinion. We affirm the district court's judgment in all other respects.

I.

A.

Since the 1970s, Bayer's Mexican affiliate has sold naproxen sodium pain relievers under the trademark "FLANAX" in Mexico and other parts of Latin America. Bayer, a Swiss entity, owns a Mexican registration for the FLANAX mark.[1] Bayer neither owns an

---

[1] Bayer's Mexican affiliate, which is not a party to this case, distributes FLANAX in that country through a licensing agreement with Bayer.

American registration for the mark nor sells pain relievers under the FLANAX name in the United States. Rather, Bayer's American sister company, Bayer Healthcare LLC (BHC), sells naproxen sodium pain relievers in the United States under the "ALEVE" name.[2]

Bayer's FLANAX is a top-selling pain reliever in Mexico. The drug is therefore well known among consumers in the United States who have spent time in Mexico and other parts of Latin America.

Given the familiarity with FLANAX among a large subset of consumers in the United States, Belmora saw an opportunity to sell naproxen sodium pain relievers under the FLANAX name to American consumers. To that end, Belmora began selling naproxen sodium pain relievers under the FLANAX name in the United States in 2004.

Belmora's early marketing materials targeted Hispanic American consumers familiar with FLANAX. Belmora's founder, Jamie Belcastro, described the company's business model as "provid[ing] a user-friendly menu of . . . drug products for common ailments to U.S. residents of Hispanic background." J.A. 85. Belmora also associated its FLANAX pain relievers with Bayer's FLANAX sold in Mexico. For example, a telemarketer script identified Belmora as "the direct producers of FLANAX" in the United States and described its product as "a very well-known medical product in the Latino

_____

[2] BHC is also a party to this case. Bayer and BHC are separate entities asserting slightly different claims. But because any distinction between the two entities is irrelevant to our analysis in this opinion, we refer to Bayer and BHC collectively as "Bayer," unless otherwise noted.

American market [that is] sold successfully in Mexico." J.A. 94. Belmora's packaging used a color scheme, font size, and typeface similar to Bayer's FLANAX packaging.

On October 6, 2003, Belmora petitioned the U.S. Patent and Trademark Office (PTO) to register the FLANAX mark. On February 27, 2004, Bayer filed a competing application with the PTO to register the mark.[3] The PTO published Belmora's application for opposition on August 3, 2004. On September 19, 2004, the PTO sent a letter to Bayer suspending its application, citing Belmora's earlier application. The PTO issued the registration to Belmora on February 1, 2005.

On June 29, 2007, Bayer petitioned the U.S. Trademark Trial and Appeal Board (TTAB) to cancel Belmora's registration. Bayer's petition sought cancellation under § 14(3) of the Lanham Act, alleging that Belmora misrepresented the source of its goods bearing the FLANAX mark.[4] The parties litigated the matter before the TTAB for nearly seven years. On April 17, 2014, the TTAB granted Bayer's petition and canceled Belmora's registration. The TTAB concluded that the evidence "readily establish[ed] blatant misuse of the FLANAX mark [by Belmora] in a manner calculated to trade in the United States on the reputation and goodwill of [Bayer's] mark created by its use in Mexico." J.A. 90. Specifically, the TTAB found that Belmora (1) knew that the FLANAX mark was in use in Mexico when it adopted the mark in the United States, (2) copied

---

[3] In actuality, Bayer's predecessor-in-interest filed the application. Bayer acquired the rights to the mark in September 2005.

[4] Bayer's cancellation petition also asserted the following claims: (1) likelihood of confusion under § 2(d) of the Lanham Act, (2) a claim under Article 6*bis* of the Paris Convention, and (3) fraud. The TTAB dismissed those claims with prejudice.

Bayer's packaging, and (3) "repeatedly invoked" the reputation of Bayer's product in its marketing materials. J.A. 91–93.

B.

On June 9, 2014—less than two months after the TTAB issued its ruling—Bayer sued Belmora in the Central District of California. The complaint asserted claims for false association and false advertising under § 43(a) of the Lanham Act. The complaint also asserted three related claims under California law for unfair competition and false advertising.[5]

Meanwhile, Belmora sought review of the TTAB decision in the Eastern District of Virginia pursuant to 15 U.S.C. § 1071(b). The Central District of California transferred Bayer's suit to the Eastern District of Virginia pursuant to 28 U.S.C. § 1404(a), where it was consolidated with Belmora's action. Belmora moved to dismiss Bayer's § 43(a) claims under Federal Rule of Civil Procedure 12(b)(6) and moved for judgment on the pleadings as to Bayer's § 14(3) claim litigated in the TTAB proceedings. The district court granted Belmora's motion. Bayer appealed.

We vacated the district court's dismissal and remanded for further proceedings. *Belmora LLC v. Bayer Consumer Care AG* (*Belmora I*), 819 F.3d 697, 715 (4th Cir. 2016), *cert. denied*, 137 S. Ct. 1202 (2017). On remand, Belmora filed an answer to Bayer's

---

[5] BHC joined Bayer as a plaintiff in the Central District of California action. Bayer alone brought the § 43(a) false association claim. Both Bayer and BHC brought the § 43(a) false advertising claim and the state-law claims.

complaint and brought seven counterclaims. Both parties moved for summary judgment. Bayer sought summary judgment on each of Belmora's counterclaims and affirmance of the TTAB decision. Belmora sought summary judgment on Bayer's § 43(a) and related state-law claims, arguing that those claims were barred by the statute of limitations and laches. In response to Belmora's motion, Bayer argued that laches, not a statute of limitations, governed its § 43(a) claims. Bayer also argued that its state-law claims were subject to tolling.

The district court granted both parties' motions. As to Belmora's motion, the court concluded that Bayer's claims were time-barred, reasoning that Bayer had "misse[d] the statute of limitations by almost a decade" on its § 43(a) claims, implicitly rejecting Bayer's laches arguments. J.A. 888. The district court further concluded that Bayer's state-law claims were time-barred but did not address Bayer's contention that its cancellation petition with the TTAB tolled those claims. As to Bayer's motion, the district court concluded that Belmora failed to marshal evidence to support each of its counterclaims. This cross-appeal followed.

## II.

We review the district court's summary judgment rulings de novo. *Synergistic Int'l, LLC v. Korman*, 470 F.3d 162, 170 (4th Cir. 2006). "Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment

8

as a matter of law." *Ray Cmmc'ns, Inc. v. Clear Channel Commc'ns, Inc.*, 673 F.3d 294, 299 (4th Cir. 2012) (citing Fed. R. Civ. P. 56(a)).

Because the district court "disposed of cross-motions for summary judgment, 'we consider each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law.'" *Defenders of Wildlife v. N.C. Dep't of Transp.*, 762 F.3d 374, 392 (4th Cir. 2014) (quoting *Bacon v. City of Richmond*, 475 F.3d 633, 638 (4th Cir. 2007)). "In considering each motion, we 'resolve all factual disputes and any competing, rational inferences in the light most favorable to the party opposing that motion.'" *Id.* (quoting *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003)).

III.

On appeal, Bayer contends that the district court erred in concluding that its § 43(a) and related state-law claims were time-barred. In its cross-appeal, Belmora argues that the district court erred in holding that its counterclaims failed as a matter of law. Belmora also contends that the district court erred in affirming the TTAB decision.

A.

We begin with Bayer's claims under § 43(a) of the Lanham Act. "While much of the Lanham Act addresses the registration, use, and infringement of trademarks and related marks, § 43(a) . . . goes beyond trademark protection." *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 28–29 (2003). That provision "sets forth unfair competition causes of action for false association and false advertising." *Belmora I*, 819 F.3d at 706;

9

*see also Advanced Res. Int'l, Inc. v. Tri-Star Petrol. Co.*, 4 F.3d 327, 334 (4th Cir. 1993) ("The typical § 43(a) Lanham Act claim is brought by a plaintiff who is in competition with the defendant, and charges the defendant with using a mark . . . so similar to that of the plaintiff's that the public may be confused as to the source of the good or service."). Here, Bayer asserts that Belmora's use of the FLANAX mark in the United States amounts to false association and false advertising in violation of § 43(a).

Because the Lanham Act does not contain an explicit limitations period for § 43(a) claims, the district court "follow[ed] the traditional practice of borrowing the most analogous statute of limitations from state law." J.A. 887. The district court concluded that the statute of limitations began running on Bayer's claims as early as September 19, 2004—the date on which the PTO suspended Bayer's competing application to register the FLANAX mark. And because Bayer filed its complaint in the Central District of California in June 2014, the district court held that Bayer "misse[d] the statute of limitations by almost a decade." J.A. 888. Bayer contends that the district court erred by reading a limitations period into the Lanham Act where none exists for § 43(a) claims. Bayer argues that laches, rather than a statute of limitations, is the appropriate defense to its claims.

1.

Before proceeding further, we pause to clarify which circuit's law guides our inquiry into whether Bayer's § 43(a) claims are time-barred. Bayer's claims arrived in the Eastern District of Virginia following a transfer of venue from the Central District of California

10

pursuant to 28 U.S.C. § 1404(a). Accordingly, both parties invite us to apply the law of the transferor court—here, the law of the Ninth Circuit—to resolve the matter.

A transfer under § 1404(a) from one federal district court to another results in nothing more than "a change of courtrooms." *Van Dusen v. Barrack*, 376 U.S. 612, 639 (1964). Thus, in diversity cases, the transferee court applies the state law that the transferor court would have applied absent the transfer. *Id.* Otherwise, "initiating a transfer under § 1404(a) [would] change[] the state law applicable to a diversity case," *Ferens v. John Deere Co.*, 494 U.S. 516, 526 (1990), which would violate the federalism principles underlying *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938).

That rationale collapses in federal question cases that require a transferee court to do nothing more than interpret federal law. Unlike state law, federal law is a "single body of law," which each federal court "has an obligation to . . . independently" interpret. *In re Korean Air Lines Disaster of Sept. 1, 1983*, 829 F.2d 1171, 1175–76 (D.C. Cir. 1987), *aff'd on other grounds sub nom. Chan v. Korean Air Lines, Ltd.*, 490 U.S. 122 (1989) (quoting *H.L. Green Co. v. MacMahon,* 312 F.2d 650, 652 (2d Cir. 1962)). And "every Circuit . . . has concluded that when one district court transfers a case to another, the norm is that the transferee court applies its own Circuit's cases on the meaning of federal law." *AER Advisors, Inc. v. Fidelity Brokerage Servs., LLC*, 921 F.3d 282, 288 (1st Cir. 2019); *accord Bradley v. United States*, 161 F.3d 777, 782 n.4 (4th Cir. 1998) (declining to "apply the law of another circuit simply because the case was transferred from the other circuit").

This appeal requires us to decide whether to apply a statute of limitations borrowed from the most analogous state law or instead some other "timeliness rule[] drawn from

11

federal law" to claims under § 43(a) of the Lanham Act, which does not expressly contain a limitations period for those claims. *DelCostello v. Int'l B'hood of Teamsters*, 462 U.S. 151, 162 (1983). Whether to read a limitations period into a federal law is a garden-variety question of federal statutory interpretation. *See Menowitz v. Brown*, 991 F.2d 36, 40 (2d Cir. 1993) (per curiam) ("Whether or not courts apply a state limitations period to a federal claim, 'the choice of a limitations period for a federal cause of action is itself a question of federal law.'" (quoting *DelCostello*, 462 U.S. at 159 n.13)). Because § 43(a) is part of a single body of federal law, we apply Fourth Circuit law to interpret it.

2.

We turn to the primary issue raised in this appeal: whether a statute of limitations or some other timeliness rule applies to Bayer's § 43(a) claims. *See* 15 U.S.C. § 1125(a). "As is often the case in federal law," the Lanham Act does not expressly incorporate a limitations period for § 43(a) claims. *DelCostello*, 462 U.S. at 158.[6] In the absence of an express limitations period, we typically hold "that Congress intended that the courts apply the most closely analogous statute of limitations under state law." *Id.* But "state statutes of limitations can be unsatisfactory vehicles for the enforcement of federal law." *Id.* at 161; *see also Reed v. United Transp. Union*, 488 U.S. 319, 324 (1989) (describing the "closely circumscribed exception to the general rule that statutes of limitations are to be

---

[6] Unlike § 43(a) claims, infringement claims are expressly subject to "equitable principles, including laches, estoppel, and acquiescence." 15 U.S.C. § 1115(b)(9); *see Ray Commc'ns, Inc.*, 673 F.3d at 300 (applying laches to an infringement claim).

12

borrowed from state law"). In those circumstances, courts "decline[] to borrow state statutes" and "instead use[] timeliness rules drawn from federal law—either express limitations periods from related federal statutes, or such alternatives as laches." *DelCostello*, 462 U.S. at 162.

We conclude that § 43(a) is one such federal law for which a state statute of limitations would be an unsatisfactory vehicle for enforcement. Rather, the affirmative defense of laches, which applies to claims that are equitable in nature, *see White v. Daniel*, 909 F.2d 99, 102 (4th Cir. 1990), "provides a closer analogy than available state statutes," *DelCostello*, 462 U.S. at 172.

The text of § 43(a) supports this conclusion. *See Broughman v. Carver*, 624 F.3d 670, 675 (4th Cir. 2010) ("Because Congress' intent 'can most easily be seen in the text of the Acts it promulgates,' we begin with an examination of the statute's 'plain text.'" (quoting *United States v. Wills*, 234 F.3d 174, 178 (4th Cir. 2000))). The Lanham Act provides that § 43(a) claims for damages are "subject to the principles of equity," 15 U.S.C. § 1117(a), and that courts may grant injunctive relief to remedy § 43(a) violations "according to the principles of equity," *id.* § 1116(a). Other circuits have similarly emphasized "the equitable character of § 43(a) actions" in applying a laches defense to § 43(a) claims. *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 836–37 (9th Cir. 2002); *see Santana Prods., Inc. v. Bobrick Washroom Equip., Inc.*, 401 F.3d 123, 135 (3d Cir. 2005); *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 822 (7th Cir. 1999).

Accordingly, considering "the federal policies at stake and the practicalities of litigation," *Reed*, 488 U.S. at 324 (quoting *DelCostello*, 462 U.S. at 172), we hold that

13

laches is the appropriate defense to § 43(a) claims.  Laches is "an equitable defense" that "is distinct from the statute of limitations." *Jarrow*, 304 F.3d at 835.  Laches "generally applies to preclude relief for a plaintiff who has unreasonably 'slept' on his rights." *PBM Prods., LLC v. Mead Johnson & Co.*, 639 F.3d 111, 121 (4th Cir. 2011) (applying laches to a § 43(a) claim).[7]

The district court held that Bayer's § 43(a) claims were barred by the most analogous state-law statute of limitations.  The district court therefore judged the timeliness of Bayer's § 43(a) claims under an incorrect legal standard.  Accordingly, we vacate the portion of the district court's order granting summary judgment on Bayer's § 43(a) claims and remand for the court to determine whether those claims are barred by laches and to make any further factual findings necessary to support that determination.  *See White*, 909

---

[7] In addition to properly applying laches to a set of § 43(a) claims, the *PBM Products, LLC* court disposed of a second set of § 43(a) claims as barred per se by the analogous state statute of limitations.  639 F.3d at 121.  That determination directly conflicts with a prior precedential decision of this Court, which acknowledged that Lanham Act claims are not controlled by any statute of limitations. *See What-A-Burger of Va., Inc. v. Whataburger, Inc. of Corpus Christi, Tx.*, 357 F.3d 441, 449 (4th Cir. 2004) ("Because the Lanham Act does not include a limitations period, courts use the doctrine of laches to address the inequities created by a trademark owner who, despite having a colorable infringement claim, allows a competitor to develop its products around the mark and expand its business, only then to lower the litigation boom.").  While *What-A-Burger* dealt with an infringement claim, as we have explained above, the text of § 43(a) similarly does not allow courts to borrow a state statute of limitations to bar a plaintiff's claims.  Without any other means of reconciling the two decisions, we are bound to apply the principles correctly espoused in *What-A-Burger*. *See McMellon v. United States*, 387 F.3d 329, 333–34 (4th Cir. 2004) (en banc) ("[W]hen there is an irreconcilable conflict between opinions issued by three-judge panels of this court, the first case to decide the issue is the one that must be followed, unless and until it is overruled by this court sitting en banc or by the Supreme Court.").

14

F.2d at 102 (observing that a laches finding "depends upon the particular circumstances of the case").

3.

On remand, the statute of limitations from the most analogous state law will continue to play an important role in the district court's laches analysis. Laches is presumed to bar § 43(a) claims filed outside the analogous limitations period. *See PBM Prods., LLC*, 639 F.3d at 121; *accord Jarrow*, 304 F.3d at 837; *Hot Wax, Inc.*, 191 F.3d at 822. But "whether a Lanham Act claim has been brought within the analogous state statute of limitations is not the sole indicator of whether laches may be applied in a particular case." *Hot Wax, Inc.*, 191 F.3d at 821–22.

Should the district court conclude that the presumption applies to Bayer's § 43(a) claims, the district court should consider the following factors to determine if Bayer can overcome the presumption: (1) whether Bayer knew of Belmora's adverse use of the FLANAX mark, (2) whether Bayer's delay in challenging that use "was inexcusable or unreasonable," and (3) whether Belmora "has been unduly prejudiced" by Bayer's delay. *See Ray Commc'ns, Inc.*, 673 F.3d at 300.[8]

---

[8] In addition to applying the statute-of-limitations presumption as a threshold inquiry, other circuits also import the presumption into the analysis of the laches factors. *See, e.g.*, *Jarrow*, 304 F.3d at 838–39 (observing that "[t]he reasonableness of the plaintiff's delay is considered in light of the time allotted by the analogous limitations period"). But doing so inappropriately double counts the presumption. We therefore

B.

In addition to its § 43(a) claims, Bayer brought unfair competition and false advertising claims under California law. At summary judgment, Bayer argued that the filing of its cancellation petition with the TTAB tolled the statute of limitations applicable to those claims.[9] The district court held that Bayer's state-law claims were time-barred but never addressed Bayer's tolling arguments or made any factual findings to determine whether Bayer's claims were subject to tolling. Thus, the absence of fact-finding on the tolling question by the district court deprives us of the ability to conduct appellate review on the current record. Accordingly, we vacate the portion of the district court's order granting summary judgment on Bayer's state-law claims and remand for the district court to determine in the first instance whether those claims are subject to tolling and to make any further factual findings necessary to support that determination.

C.

We next turn to Belmora's seven counterclaims. Belmora brought the following counterclaims against Bayer: (1) trademark infringement in violation of §§ 15 and 33(b) of the Lanham Act, (2) common-law trademark infringement, (3) unfair competition and false

---

conclude that the district court should apply the factors independent of the presumption in order to determine if the presumption can be rebutted.

[9] Bayer invokes "two distinct types of tolling: (1) tolling based on Bayer's filing of the petition to cancel Belmora's FLANAX registration[] and (2) equitable tolling under California law." Bayer Resp. Br. at 11–12. Given the absence of fact-finding below, we do not reach the merits of either theory of tolling.

16

designation of origin in violation of § 43(a) of the Lanham Act and common law, (4) importation of unauthorized goods in violation of § 526 of the Tariff Act of 1930, (5) importation of infringing goods in violation of § 42 of the Lanham Act, (6) monopolization in violation of § 2 of the Sherman Act, and (7) tortious interference with contract or prospective economic advantage. The district court concluded that Belmora failed to offer evidence to support each of its counterclaims. We have little difficulty affirming that conclusion.

## 1.

We begin with Belmora's first five counterclaims, which seek to hold Bayer liable for secondary trademark infringement. Belmora contends that Bayer's Mexican FLANAX product has unlawfully crossed the border and is available for sale in the so-called "gray market" in the United States. *See* Belmora Opening Br. at 50–55. Belmora seeks to hold Bayer liable for allegedly turning a blind eye to the unlawful importation and sale of its product. Each of these five counterclaims rests on a slightly different factual and legal basis, but Belmora's theory of liability rises and falls on its ability to prove that Bayer (1) "intentionally induce[d] another to infringe" Belmora's mark or (2) "continue[d] to supply its product to one whom it kn[ew] or ha[d] reason to know [was] engaging in trademark infringement." *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 854 (1982).

The district court concluded that Belmora failed to show that Bayer "has induced others to sell [FLANAX] in the U.S., or that it has continued to supply the product to a party with knowledge or reason to know that party was selling it in the U.S." J.A. 892.

17

The district court further concluded that "Belmora has no evidence linking Bayer to the importation of Mexican FLANAX into the U.S.," and that Belmora failed to marshal any evidence showing "when, how, where, or what Bayer allegedly imported, or to whom it provided assistance." J.A. 892–93. On appeal, Belmora argues that it introduced sufficient evidence showing that Bayer was "willfully blind" to the unlawful sale and importation of its Mexican product in the United States. Belmora Opening Br. at 52–55. We disagree.

Given the widespread availability of Bayer's FLANAX product in Mexico, it is small wonder that the product has occasionally made its way across the border. Like the district court, we conclude that Belmora has offered no evidence to show that Bayer had anything to do with the importation or sales of its Mexican FLANAX product in the United States. Nor has Belmora shown that Bayer was willfully blind to the unlawful importation and sales of FLANAX. In support of its argument, Belmora cites to the deposition testimony of Bayer's Rule 30(b)(6) witness denying knowledge of the unlawful importation and sales of FLANAX or of a policy to combat the problem. But that testimony does not suffice to create a genuine dispute on the issue of Bayer's willful blindness. *See Louis Vuitton S.A. v. Lee*, 875 F.2d 584, 590 (7th Cir. 1989) (describing willful blindness as a "fail[ure] to inquire further" for fear "of what the inquiry would yield"); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) (holding that "[t]he mere existence of a scintilla of evidence" is insufficient to survive summary judgment). Accordingly, we affirm the district court's grant of summary judgment to Bayer on Belmora's first five counterclaims.

2.

In its sixth counterclaim, Belmora alleges that Bayer violated § 2 of the Sherman Act by allegedly using its monopoly power to exert pressure on Bionpharma Inc. (Bionpharma)—the sole authorized source of naproxen sodium liquidgels with whom Bayer has an exclusivity agreement—not to sell naproxen sodium liquidgels to Belmora. To succeed on its § 2 claim, Belmora must show "(1) that [Bayer] possesses monopoly power in the relevant market and (2) that [Bayer] willfully acquired or maintained that power 'as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident.'" *Cavalier Tel., LLC v. Verizon Va., Inc.*, 330 F.3d 176, 183 (4th Cir. 2003) (quoting *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 481 (1992)). The district court concluded that Belmora failed to offer sufficient evidence establishing a relevant product market.

"Proof of a relevant market is a threshold for a Sherman Act § 2 claim." *Consul, Ltd. v. Transco Energy Co.*, 805 F.2d 490, 493 (4th Cir. 1986). Belmora "bears the burden of proof on the issue of the relevant product and geographic markets." *Satellite Television & Associated Res., Inc. v. Cont'l Cablevision of Va., Inc.*, 714 F.2d 351, 355 (4th Cir. 1983). Belmora defines the relevant product market as one for "branded naproxen sodium." J.A. 292–93. To support its definition of the relevant product market, Belmora proffered the report and testimony of Gordon Rausser, Ph.D., its expert witness on economic and antitrust matters.

We agree with the district court that Rausser's report does not adequately establish a relevant product market. *See Mil. Servs. Realty, Inc. v. Realty Consultants of Va., Ltd.*,

19

823 F.2d 829, 832 (4th Cir. 1987) (affirming the district court's grant of summary judgment when the plaintiff's expert did not "adequately identify the relevant market"). Critically, Rausser's report does not opine that "branded naproxen sodium" constitutes a relevant product market. Rausser admitted during his deposition that he did not "identify the relevant market that Bayer . . . allegedly monopolized or threatened to monopolize." J.A. 364. We therefore affirm the district court's grant of summary judgment to Bayer on Belmora's sixth counterclaim.

3.

Belmora's final counterclaim alleges tortious interference with contract or prospective economic advantage. As with Belmora's sixth counterclaim, the seventh counterclaim rests on Belmora's allegation that Bayer allegedly abused its market power through its exclusivity agreement with Bionpharma and pressured Bionpharma not to sell naproxen sodium liquidgels to Belmora. Belmora contends that it was unable to obtain the liquidgels as a result and, consequently, lost out on opportunities to fill orders with potential retail customers.

To succeed on a claim for tortious interference with contract or prospective economic advantage, Belmora must show (1) "the existence of a business relationship or expectancy, with a probability of future economic benefit," (2) that Bayer had "knowledge of the relationship or expectancy," (3) "that it was reasonably certain that absent intentional misconduct, [Belmora] would have continued in the relationship or realized the expectancy," and (4) "that [Belmora] suffered damages from the interference." *Com.*

20

*Funding Corp. v. Worldwide Sec. Servs. Corp.*, 249 F.3d 204, 213 (4th Cir. 2001) (applying Virginia law). The district court concluded that the seventh counterclaim "fail[ed] for a few reasons," finding "no evidence that Bayer knew about the supposed orders, or was aware of Belmora's interest in entering the naproxen sodium liquidgel category." J.A. 896.

We agree. Belmora has failed to show that Bayer knew of Belmora's business expectancy at the time it engaged in the alleged interfering conduct—here, when it entered into the exclusivity agreement with Bionpharma. Bayer entered into that agreement in late 2016. And Belmora did not begin discussing sales with potential retail customers until 2017. Belmora cannot establish that Bayer knew of Belmora's retail orders when it engaged in the allegedly interfering conduct, because Bayer entered into the exclusivity agreement with Bionpharma *before* Belmora began discussing orders with potential retail customers. Belmora therefore has failed to offer evidence establishing that Bayer had knowledge of its business expectancy. Accordingly, we affirm the district court's grant of summary judgment to Bayer on Belmora's seventh counterclaim.

D.

Finally, we turn to Belmora's § 1071(b) challenge to the TTAB decision. The TTAB ordered the cancellation of Belmora's registration, ruling that Belmora misrepresented the source of its goods in violation of § 14(3) of the Lanham Act. The TTAB found that Belmora knew that the FLANAX mark was in use in Mexico when it adopted the mark in the United States, copied Bayer's packaging, and "repeatedly invoked" the reputation of Bayer's product in its marketing materials. J.A. 91–93. Belmora

21

submitted new evidence before the district court not previously submitted before the TTAB, but the court concluded that Belmora's new evidence did not bear on any disputed factual questions. The court therefore affirmed the TTAB decision under the deferential substantial evidence standard of review. Belmora argues that the district court erred by failing to conduct a de novo review of the entire record.

We recently considered the appropriate standard of review governing § 1071(b) actions in *Swatch AG v. Beehive Wholesale, LLC*, 739 F.3d 150 (4th Cir. 2014). In that case, we explained that a district court in a § 1071(b) action "reviews the record de novo and acts as the finder of fact." *Id.* at 155. And although the parties may admit the PTO record, "the parties have an unrestricted right to submit further evidence as long as it is admissible under the Federal Rules of Evidence and Civil Procedure." *Id.* Accordingly, "where new evidence is presented to the district court on a disputed fact question," the district court must conduct a de novo review of the entire record, including the evidence before the TTAB and any new evidence submitted by a party. *Kappos v. Hyatt*, 566 U.S. 431, 444 (2012) (explaining that a district court "cannot meaningfully defer to the PTO's factual findings if the PTO considered a different set of facts").[10]

Thus, we have rejected an "impermissible hybrid review" in § 1071(b) actions when a party submits new evidence not previously presented to the TTAB. *Swatch AG*, 739 F.3d at 156. In *Swatch AG*, the district court purported to apply a "'unique standard of review,'

---

[10] In contrast, when no new evidence is submitted, "the district court must apply the court/agency standard of review to [the PTO's] fact finding." *Hyatt v. Kappos*, 625 F.3d 1320, 1334 (Fed. Cir. 2010) (en banc), *aff'd and remanded*, 566 U.S. 431 (2012).

acting in part as an appellate body" and sitting in a "dual capacity." *Id.* at 156. We held that the district court's standard of review was "in tension with the statute and directly conflict[ed] with the requirements of *Kappos*." *Id.* We nonetheless affirmed the district court's conclusion, holding that "there [were] more than sufficient facts recited in its opinion to support its findings." *Id.*

So too here. To succeed on its § 14(3) claim, Bayer was required to show "blatant misuse of the mark by [Belmora] in a manner calculated to trade on the goodwill and reputation of [Bayer]." *Otto Int'l Inc. v. Otto Kern GmbH*, 83 U.S.P.Q.2d 1861, 1863 (T.T.A.B. 2007); *see also Belmora I*, 819 F.3d at 714 (noting that a § 14(3) "[p]etitioner must establish that the 'registrant deliberately sought to pass off its goods as those of [the] petitioner'" (quoting 3 J. Thomas McCarthy, Trademarks and Unfair Competition § 20:30 (4th ed. 2002)). The district court began by reciting the TTAB's findings that Belmora knew that the FLANAX mark was in use in Mexico when it adopted the mark in the United States, copied Bayer's packaging, and "repeatedly invoked" the reputation of Bayer's product in its marketing materials. J.A. 91–93. The district court further found that Belmora failed to submit "any credible new evidence" showing that (1) Belmora's founder "was unaware of Bayer's Mexican FLANAX when he adopted the mark for his own company," (2) the FLANAX packaging used by Bayer and Belmora "did not actually look the way the [TTAB] said [it] did," or (3) the "numerous examples" of the use of Bayer's "goodwill" by Belmora "were never published or used." J.A. 897.

The above facts in the district court's opinion support its conclusion that Belmora's use of the FLANAX mark violated § 14(3). While the district court purported to apply an

23

"impermissible hybrid review," *Swatch AG*, 739 F.3d at 156, the court recited sufficient facts showing that Belmora "blatant[ly] misuse[d]" the mark "in a manner calculated to trade on [Bayer's] goodwill and reputation," *Otto Int'l Inc.*, 83 U.S.P.Q.2d at 1863. Accordingly, we affirm the district court's grant of summary judgment to Bayer on its request for affirmance of the TTAB decision.

## IV.

For the foregoing reasons, we affirm the district court's grant of summary judgment in Bayer's favor on Belmora's counterclaims and its affirmance of the TTAB decision. We vacate the district court's grant of summary judgment in Belmora's favor on Bayer's § 43(a) and related state-law claims. We remand the matter to the district court to determine in the first instance whether Bayer's § 43(a) claims are barred by laches and whether Bayer's related state-law claims are subject to tolling.

*AFFIRMED IN PART, VACATED IN PART,*
*AND REMANDED WITH INSTRUCTIONS*