**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 22-1497**

———————

MICHAEL J. KLEIN, Personal Representative of the Estate of Richard A. Kay; EF INVESTMENTS, LLC; EAGLE FORCE HOLDINGS, LLC,

   Plaintiffs – Appellees,

 v.

STANLEY V. CAMPBELL; EAGLEFORCE ASSOCIATES, INC.,

   Defendants – Appellants.

———————

**No: 22-1524**

———————

MICHAEL J. KLEIN, Personal Representative of the Estate of Richard A. Kay; EF INVESTMENTS, LLC; EAGLE FORCE HOLDINGS, LLC,

   Plaintiffs – Appellants,

 v.

STANLEY V. CAMPBELL; EAGLEFORCE ASSOCIATES, INC.,

   Defendants – Appellees.

———————

Appeals from the United States District Court for the Eastern District of Virginia, at Alexandria.  Leonie M. Brinkema, District Judge.  (1:20-cv-01122-LMB-JFA)

———————

Argued:  March 7, 2023         Decided:  June 6, 2023

Before AGEE, HARRIS, and QUATTLEBAUM, Circuit Judges.

─────────────

Affirmed in part, vacated in part, and remanded by unpublished opinion. Judge Agee wrote the opinion, in which Judge Harris and Judge Quattlebaum joined.

─────────────

James Bennett Kinsel, PROTORAE LAW PLLC, Tysons, Virginia, for Appellants/Cross-Appellees. Harold Mark Walter, OFFIT KURMAN, PA, Columbia, Maryland, for Appellees/Cross-Appellants.

─────────────

Unpublished opinions are not binding precedent in this circuit.

AGEE, Circuit Judge:

This appeal arises out of an unsuccessful attempt to form a partnership. Richard Kay, a businessman, sought to acquire a partnership interest in Stanley Campbell's established business, EagleForce Associates, Inc. ("Associates"). As the two men negotiated a potential partnership agreement, Kay started transferring funds to Associates with the expectation that those funds would constitute a capital investment establishing his equity interest in the partnership. To protect Kay in case negotiations soured, Campbell executed a promissory note on behalf of Associates indebting Associates to Kay in the amount of $700,000, roughly the balance lent to Associates at the time of the note's execution. After Kay advanced additional funds to Associates—approximately $1.2 million—without executing an additional promissory note, negotiations ceased without a final partnership agreement.

Nonetheless, Kay sought to establish the partnership by judicial decree in Delaware state court. In that proceeding, Kay denied the existence of a loan to Associates and argued that the money he had transferred represented his equity interest in the business. For his part, Campbell denied the existence of a partnership but repeatedly acknowledged the transferred funds were a loan. After the Delaware court ruled in favor of Campbell and found there was no enforceable partnership, Kay sought to enforce the note by demanding repayment. When Campbell refused to pay, Kay and his affiliated companies, Eagle Force Investments, LLC ("Investments") and EF Holdings, LLC ("Holdings") (collectively "Plaintiffs"), brought this action in the Eastern District of Virginia against Campbell and Associates (collectively "Defendants") to recover the total amount transferred,

3

approximately $1.9 million. Contrary to the position taken in the Delaware litigation, Defendants now deny both the validity of any loan and their liability to repay any monies. After discovery, the district court granted summary judgment to Plaintiffs, holding that Defendants were jointly and severally liable to them for the principal amount of roughly $1.9 million. Given that holding, the only remaining issue to be decided was when interest on that principal amount began to accrue. Following a bench trial, the district court determined that interest commenced five days after Plaintiffs demanded repayment and awarded Plaintiffs $2,101,003.88 in total damages. Both parties appealed.

For the following reasons, we affirm in part, vacate in part, and remand for further proceedings.

## I. Partnership Negotiations & Legal Proceedings

### A. Underlying Facts

Richard Kay was the sole member of Investments, which in turn is the sole member of Holdings.[1] Stanley Campbell is the sole owner, president, and chief executive officer of Associates, a healthcare technology development and consulting firm.

In January 2014, Kay and Campbell began discussing the possibility of becoming business partners in Associates—Kay planned to invest the capital and Campbell intended to contribute his intellectual property. Despite not having a binding partnership agreement

---

[1] Shortly after the Complaint in this action was filed, Kay passed away and the personal representative of his estate, Michael Klein, was substituted as plaintiff. Any further reference to "Plaintiffs" includes Klein.

4

yet in place, Kay immediately began funding Associates.[2] By July 7, 2014, Kay had provided Associates $644,000.

Although the men expected for their partnership agreement to go as planned—meaning that the money Kay transferred would be considered his equity capital in the entity—they also recognized the need for a repayment contingency in case negotiations failed. To accomplish this backup plan, Kay's attorney drafted a promissory note ("the Note"), which was signed on July 7, 2014. The men agreed that the Note would "become null and void once" Kay and Campbell finalized their partnership agreement. J.A. 2417.

Relevant here, the Note stated that Associates, as "the Borrower," promised to pay Kay, "the Lender," "upon demand, the principal sum of Seven Hundred Thousand Dollars ($,700,000) [sic]" with interest. J.A. 63 (internal quotation marks omitted). It did not reference Campbell personally, Holdings, or Investments. Additionally, the Note provided that the principal would not begin accruing interest until Associates was in default, which would occur if Associates failed to repay the loan within five days of its due date. Although the Note stated that it was due "upon demand," it also included a provision stating that the loan was due three months after the Note was executed, which would make payment due on October 7, 2014. J.A. 63. Campbell signed the Note on behalf of Associates.

---

[2] All payments originated from either Kay's personal bank account or from his American Express account. In some instances, the funds were passed through Investments or Holdings before being transferred to Associates directly or paid to one of Associates' creditors.

On August 28, 2014, Campbell and Kay signed two additional documents (the "Transaction Documents") that set out certain terms of Campbell and Kay's desired partnership. The Transaction Documents did not reference the Note.

As negotiations dragged on, Kay continued to contribute money to Associates and by February 2015, he had contributed roughly $1.9 million total—the original $700,000 represented by the Note and approximately $1.2 million after executing the Note.[3] The parties did not execute a second promissory note covering the additional money loaned or provide any specific written documentation evidencing a modification of the Note to cover the additional funds.

The partnership negotiations eventually failed. Campbell informed Kay via email that they "ha[d] reached an impasse that we are unable to resolve" and that partnership negotiations would cease. J.A. 1966. Campbell also noted that "[w]e have booked the funding as a loan." J.A. 1966. Kay replied, "Your email is totally untrue, misleading and the [Associates] investment money has never been a loan[.] You know that as does everyone. I am 50 percent owner [of Associates] and will continue to operate in that role." J.A. 1966.

---

[3] As will be discussed, the parties dispute the exact amount of money Plaintiffs provided to Defendants. For simplicity, we refer to the total amount transferred as roughly or approximately $1.9 million, consisting of the undisputed original $700,000 contemplated by the Note and the disputed additional roughly $1.2 million allegedly given through either an oral modification of the Note or a separate oral agreement. Use of this figure is not meant to signal an opinion on the actual amount of money lent, which, as discussed below, remains a question for the district court to resolve.

B. The Delaware Litigation

In March 2015, Plaintiffs filed a lawsuit in the Delaware Court of Chancery[4] seeking a judicial decree establishing a binding partnership agreement that recognized Kay as fifty-percent owner of Associates based on the Transaction Documents.[5] Plaintiffs did not reference the Note or any obligation of repayment of the funds Kay had advanced. Campbell, the sole defendant, responded that the Transaction Documents were not a final partnership agreement and that he had never agreed to be bound by them. Throughout the litigation, Kay denied the existence of the loan while Campbell repeatedly affirmed that he had received the money from Kay only as a loan, referenced the Note to support his position, and pledged his personal liability for at least some of the funds. The Delaware court ultimately concluded that Plaintiffs did not show that the partnership existed and entered judgment for Campbell.

Certain parts of the testimony and evidence produced in the Delaware litigation are relevant to the current appeal. First, Kay testified that the $1.9 million he invested in Associates "was never a loan." J.A. 1963. Second, Kay's attorney who had drafted the Note stated that Note "does not" bind Campbell personally. J.A. 2538. Finally, for his part, Campbell stated at trial that he "agreed to be personally liable on [the Note] for at least part

---

[4] Delaware was selected per a forum-selection clause in the Transaction Documents.

[5] The Delaware lawsuit named only Holdings and Investments as plaintiffs. Kay simply verified the allegations contained in the Complaint and testified during the trial. However, because Kay was the sole owner of these entities, for ease of reference, we refer to the Delaware Litigation as involving the same "Plaintiffs" as this action.

of the money that was coming in from [Kay]." J.A. 300. He explained that the Note was in place so that "there was always a mechanism to make [Kay] whole that I was [a] signatory on, all the way up to even now." J.A. 300.

Two of Campbell's responses to Kay's requests for admissions and interrogatories in the Delaware litigation also bear on the current case. He denied Kay's request that he "[a]dmit that [he] never entered into an agreement to borrow money from Richard Kay." J.A. 71. Campbell elaborated that "he has entered into an agreement to borrow money from Richard Kay and/or his affiliates. [Campbell] further states that the [Note] was drafted by Richard Kay's attorneys, reviewed by [Campbell's] attorney and executed with the anticipation that any additional monetary contributions from Kay would be subject to the same terms and conditions as the original loan." J.A. 71.

There were also numerous documents disclosed in the Delaware litigation that consistently acknowledged that Defendants owed money to Kay and Investments. Specifically, in accordance with a Delaware court order, Defendants provided Plaintiffs with more than one hundred documents listing Defendants' accounts payable, balance sheets containing Associates' current liabilities, general ledgers, and tax returns reflecting obligations to Kay and Investments. For example, on August 19, 2015, Defendants provided Plaintiffs with their accounts payable reflecting: (1) a loan payable to "Richard Kay Personal" described as "Personal Loan (Campbell Personal)" for $772,596.84; and (2) a loan payable to "EagleForce Holding" described as a "Corporate Loan" for $1,147,254.94. J.A. 317–18. The total of these two loans is $1,919,851.78. Similarly,

8

Defendants supplied Plaintiffs with Associates' corporate balance sheets for the year 2015 that listed "Loans Payable" to Kay as $1,737,008.16. J.A. 618.

## C. District Court Proceedings

After losing in the Delaware litigation and unsuccessfully attempting to enforce the Note privately, Plaintiffs brought a diversity suit in the Eastern District of Virginia, in which they completely changed theories from the positions taken in the Delaware litigation. Plaintiffs brought four claims in federal court against Defendants based on the existence of the alleged loan.

Plaintiffs' Complaint alleged three theories that each lead to liability for the entire $1.9 million. First, in Count I, Plaintiffs asserted a breach of a contractual promise to pay subsequently modified, acknowledged, renewed, and affirmed. This theory alleged that Defendants were liable for all the money under the Note and a subsequent oral modification of the Note that changed the principal amount to include the additional $1.2 million lent after its execution. Alternatively, the second and third claims operated in tandem, with Count II claiming a breach of written contract, requesting only the $700,000 expressly covered by the Note. Count III alleged a breach of oral promise to pay based on the theory that Defendants were liable for the additional $1.2 million under a separate oral agreement. Finally, as an alternative to a contract-oriented approach, Count IV pursued an equitable claim, under a theory of unjust enrichment. In total, Plaintiffs sought $1,985,287 in damages plus interest.

Defendants moved to dismiss, arguing that Plaintiffs failed to state a claim against Campbell because he was not listed as a Borrower on the Note. They also argued that the

9

claims were time-barred under the applicable statute of limitations. In an oral order, the district court denied the motion, reasoning that Campbell was "in a very difficult position given his admission[]" in the Delaware litigation that he was personally liable for some part of the money. J.A. 198. The district court also explained that Campbell's admissions in the Delaware litigation saved Plaintiffs' claims from any time-bar.

The parties then cross-moved for summary judgment. In relevant part, Defendants argued that the Note was not enforceable because of Kay's statements in the Delaware litigation that he never intended the money to be a loan, that the only parties to the Note were Kay and Associates, and that all claims were barred by the relevant statute of frauds and statute of limitations. In another oral order, the district court granted Plaintiffs' motion as to liability on Counts I–III and denied Defendants' motion in full.[6] The district court noted that this case was "difficult . . . to some degree" because of the "very inconsistent statements and positions from Mr. Kay," J.A. 3276, and that "both Mr. Kay and Mr. Campbell would have very significant credibility problems, because both have made representations . . . under oath, and before a Court" that contradicted their positions in this

---

[6] Having found liability under the Note and a subsequent oral agreement or modification, the district court did not make an explicit finding as to Plaintiffs' alternative claim for unjust enrichment. Nonetheless, because "the district court's order lacks any indication that the court intended it to be anything but final," and its order entering judgment against Defendants was apparently calculated to conclude all the claims before it, *see* J.A. 3436 (stating that it held a bench trial on "the outstanding issues"), we conclude that there is a final, appealable order. *AirFacts, Inc. v. de Amezaga*, 909 F.3d 84, 91 (4th Cir. 2018); *c.f. Martin v. Duffy*, 858 F.3d 239, 246 (4th Cir. 2017) ("Although a district court's failure to address a claim may foreclose appellate review of that claim, courts have found that an order that fails to explicitly address or dispose of all claims presented to the court may nevertheless qualify as a final, appealable order if the language used in the order is calculated to conclude all the claims before the district court." (cleaned up)).

10

case, J.A. 3304. Nevertheless, the district court concluded that it knew "there was something going on, some agreement." J.A. 3297. It reasoned that Campbell had repeatedly referenced the Note in the Delaware litigation and also relied on Defendants' financial documents, which consistently acknowledged the loan.

Additionally, the district court concluded that there were sufficient affirmations by Campbell that he "believed and maintained that he was personally liable on [the N]ote" to justify a grant of summary judgment against him. J.A. 3304. The district court posited that Campbell had acknowledged multiple times in the Delaware litigation that the Note was binding on him personally, and there was no "way [to] get around that" in this litigation. J.A. 3263. Thus, the district court held that Defendants were jointly and severally liable for all the funds transferred by Plaintiffs, but set a bench trial to determine the exact damages because it was "not at all comfortable . . . at the summary judgment stage" determining the precise amount due. J.A. 3305.

Thereafter, the district court filed an order clarifying its decision, confirming Defendants' liability on Counts I, II, and III. In so doing, the court declined to find which theory of liability existed in this case, instead essentially concluding that because clear liability existed on at least one of the claims, it didn't need to parse them out separately. For example, the court explained that "the oral promise to repay in Count III may be found to be governed by the terms of the Note if the facts on damage so prove, which would essentially establish liability under Count I alone, and would render alternative Counts II and III redundant." J.A. 3254–55. The district court also clarified that although it "awarded summary judgment to all three plaintiffs, [it] expect[ed] the evidence will show that

11

virtually all the money originated from [Kay]." J.A. 3255. It then stated that "[a]ny arguments which [D]efendants plan to advance based on [P]laintiffs' identities will be rejected as a waste of the Court's time, particularly given [that] Kay's [death made him unavailable] to testify to the differences between the entities." J.A. 3255.

Despite the district court's prior statements that it was uncomfortable deciding the amount of money Plaintiffs lent to Defendants, it later made such a decision in response to Plaintiffs' motion in limine. In that motion, Plaintiffs contended that in responses to interrogatories during this litigation Defendants "made judicial admissions" that Plaintiffs transferred to Defendants *at least* $1,917,851.78 by providing a chart listing the transfers they had received. J.A. 3321. As a consequence, Plaintiffs argued that "[a]ll that remain[ed] to [be] established at trial" was whether Defendants owed the additional $31,961.81 Plaintiffs sought. J.A. 3323. At an oral hearing on that motion, the district court explained that in reviewing the parties' materials, it now felt "comfortable" finding the principal amount due to be $1,919,853.78, relying on the "overwhelming evidence" produced in the Delaware litigation. J.A. 3668. In so doing, it noted that there were "a couple-of-dollar discrepanc[ies] one way or the other," but found these immaterial. J.A. 3668. The court therefore denied Plaintiffs' motion as moot and stated that all that remained for trial was a determination of when that principal amount began accruing interest.

At a bench trial, Plaintiffs argued that interest began accruing on October 12, 2014, three months and five days after the Note was signed. They reasoned that the Note specifically provided that payment would be due three months after its execution. Defendants contended that interest did not begin to accrue until five days after Plaintiffs

12

demanded payment in August 2020, relying on the "on demand" language present in the Note. As will be discussed in more depth below, the district court found that interest began accruing five days after Plaintiffs demanded payment in 2020. Accordingly, the court awarded Plaintiffs $2,101,003.88 in damages—$1,919,853.78 in principal and $181,150.10 in interest. J.A. 3706.

Both parties timely appealed from portions of the district court's judgment.[7] Defendants bring sixteen challenges to the district court's liability and damages determination, which can be grouped into five broad categories. First, they contend that the district court erred in granting summary judgment to Plaintiffs because there is evidence that Kay denied the existence of the loan. Second, Defendants assert that the district court erred by adding parties to the Note. Third, they posit that Plaintiffs' claims are barred by the applicable statute of limitations. Fourth, Defendants argue that there was insufficient evidence of either an oral modification of the Note or of a separate agreement to hold Defendants liable for the additional $1.2 million over and above the amount on the face of the Note. Finally, they claim that there is a dispute of fact regarding the amount Plaintiffs lent to them.

Plaintiffs cross-appeal from the district court's interest-accrual finding, contending that the district court erred in concluding that interest did not begin to accrue on the principal amount until Plaintiffs demanded payment.

---

[7] The Court has jurisdiction over this appeal under 28 U.S.C. § 1291.

For clarity, we organize our analysis of Defendants' arguments by theory of liability, taking those related to the Note first. We will then address the contentions involving the additional approximately $1.2 million. We will consider last Plaintiffs' challenge to the district court's interest accrual determination.

## II. Standard of Review

We review the district court's grant of summary judgment de novo. *Belmora LLC v. Bayer Consumer Care AG*, 987 F.3d 284, 291 (4th Cir. 2021). "Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Id.* (citation omitted). Where the district court disposes of cross-motions for summary judgment, we consider each motion separately, resolving all factual disputes in the light most favorable to the party opposing that motion. *Id.*

"We review a judgment following a bench trial under a mixed standard of review—factual findings may be reversed only if clearly erroneous, while conclusions of law . . . are examined de novo." *Sing Fuels Pte Ltd. v. M/V Lila Shanghai*, 39 F.4th 263, 269–70 (4th Cir. 2022) (citation omitted).

## III. The Note

Defendants first argue that the district court erred by granting summary judgment to Plaintiffs for liability under the Note (Counts I and II) because: (1) Kay specifically denied the existence of the loan, (2) Plaintiffs failed to provide clear and convincing evidence that the Note was modified to expand the listed "Lenders" to include Investments

and Holdings, and (3) Plaintiffs failed to provide clear and convincing evidence that the Note was modified to expand the listed "Borrowers" such that Campbell was also personally liable under the Note. We consider each argument in turn, ultimately concluding that Associates is liable to Kay under the Note, but that there is a genuine dispute of material fact as to Campbell's personal liability which precluded summary judgment as to him individually. We also conclude that there is a genuine dispute of material fact as to whether any party is liable to Investments and Holdings under the Note such that the award of summary judgment to them was erroneous.

## A. Kay's Denial of the Loan

The undisputed evidence demonstrates that Associates is liable to Kay for $700,000 under the Note. The Note clearly specifies that Associates is the "Borrower" and Kay is the "Lender" of the $700,000. And it provides that Associates "promise[s] to pay" Richard Kay that amount. J.A. 63.

Nonetheless, Defendants contend that because Kay twice denied that the money he contributed to Associates was a loan—once in an email and once during the Delaware litigation—the Note lacks mutual assent, rendering it unenforceable.

To be sure, "[m]utual assent by the parties to the terms of a contract is crucial to the contract's validity." *Wells v. Weston*, 326 S.E.2d 672, 676 (Va. 1985).[8] In determining the presence of mutual assent, "[t]he law imputes to a person an intention corresponding to the reasonable meaning of his words and acts." *Lucy v. Zehmer*, 84 S.E.2d 516, 521 (Va. 1954)

---

[8] We apply Virginia law in accordance with the terms of the Note.

(citation omitted). If a person's "words and acts, judged by a reasonable standard, manifest an intention to agree, it is immaterial what may be the real but unexpressed state of his mind." *Id.* at 522.

The evidence demonstrates that both Kay and Associates (represented by its President and CEO, Campbell) objectively intended at the time of execution of the Note that it would be a binding agreement that Associates would repay Kay the $700,000 he loaned. Although Kay and Campbell hoped to come to a partnership agreement in which the funds Kay advanced would be converted into an equity interest, the Note was executed with the clear understanding that should the partnership agreement not come to fruition, Associates would pay Kay back the $700,000. That Kay intended the Note to be binding is further evidenced by the fact that *Kay's* attorney drafted the Note and the parties had previously agreed that they would book the money as a loan. *See* J.A. 2238 (April 4, 2014, agreement signed by Kay and Campbell stating that the money loaned by Kay would be "evidenced by a demand promissory note issued to [Kay] by [Associates]"); J.A. 2539 (Delaware trial testimony of Kay's attorney stating that the "advances by Mr. Kay were to be done pursuant to a demand note instrument, and that" after the parties signed the partnership agreement the money loaned would be "converted to equity"). That Kay *later* denied the existence of the loan does not change the fact that there was mutual assent at the time the Note was executed. *See Alexakis v. Mallios*, 544 S.E.2d 650, 652 (Va. 2001) ("Once a competent party makes a settlement and acts affirmatively to enter into such settlement, his second thoughts at a later time upon the wisdom of the settlement do not constitute good cause for setting it aside." (cleaned up)).

16

At bottom, the language of the Note is clear and provides that Associates is liable to Kay for $700,000. Associates cannot evade liability by pointing to statements Kay made after its execution. Therefore, we conclude that the district court properly determined the Note is enforceable against Associates for its face amount and summary judgment was properly granted to Kay on this aspect of Plaintiffs' claim.[9]

### B. Investments and Holdings

Our above-stated conclusion applies only to Kay as a payee on the Note because we conclude that there is a genuine dispute of material fact as to whether any of the Defendants are liable to Investments and Holding.

Notably, the district court failed to consider whether the Note was modified to include Investments and Holdings as "Lenders." The court instead rejected Defendants'

---

[9] Defendants also argue that the Note is unenforceable because it is an agreement to agree, which is prohibited under Virginia law. *See Allen v. Aetna Cas. & Sur. Co.*, 281 S.E.2d 818, 820 (Va. 1981) (per curiam) (concluding that an agreement with terms to be negotiated at a later date is "too vague and indefinite to be enforced"). They contend that the Note was a waypoint "'made along the way' towards the desired equity investment." Opening Br. 26. We disagree. The terms of the Note were final and unambiguous. Associates clearly agreed that it would pay Kay the $700,000 he loaned. That the parties were simultaneously in the process of negotiating a partnership agreement that would supersede the Note if completed is of no consequence to the validity of the fully executed Note.

Defendants also posit that the Note is unenforceable because it violates the provision of Virginia's statute of frauds that requires "any agreement or promise to lend money or extend credit in an aggregate amount of $25,000 or more" to be in writing and signed by the party to be charged. Va. Code Ann. § 11-2(9). They assert that because Kay had not provided the full $700,000 when the Note was executed, the Note was a promise to provide money and, to be enforceable, Kay was required to sign it. We again disagree. The Note is not and cannot be construed as a promise to lend money. There is no language in the Note obligating Kay to lend any particular sum in the future: it represents monies lent.

arguments that Investments and Holdings were not subject to the Note as a "waste of [its] time." J.A. 3255. But determining whether Defendants are liable under the Note to either Investments or Holdings is not a waste of time. It is instead necessary before judgment can be entered in either party's favor.

We cannot make the requisite finding on appeal because our review of the record reveals a material dispute of fact regarding whether the Note was modified such that any of the defendants would be liable to Investments or Holdings under it. Although Campbell stated that he entered into "an agreement to borrow money from Richard Kay and/or his affiliates," J.A. 71, this does not support Plaintiffs' argument that the Note was modified to make Holdings and Investments "Lenders" under the Note. Campbell's statement can be understood to say that Campbell entered into an agreement to borrow money from Kay *or* his affiliates. This language does not clearly and undisputedly demonstrate, therefore, that Campbell entered into an agreement to borrow money from Investments or Holdings— he may have entered into an agreement only with Kay. And, even if it did demonstrate that Campbell entered into an agreement with Investments and Holdings, it certainly does not evidence his or Associates' obligation to Investments and Holdings *under the Note* given that it does not reference the Note. Additionally, while Associates' accounts payable records consistently include a "Corporate Loan" payable to "EagleForce Holding[s]," *see, e.g.*, J.A. 318, there is no indication that the loan being referenced is the Note.

18

We therefore conclude that a genuine dispute of material fact exists as to Defendants' liability to Investments and Holdings such that summary judgment in their favor was erroneous.[10]

### C. Campbell's Liability Under the Note

Similarly, although summary judgment as to *Associates'* liability under the Note was proper, we conclude that the district court erred in granting summary judgment as to Campbell individually because there is a genuine dispute of material fact as to whether he is personally liable under the Note.

The only "Borrower" named on the Note is Associates. J.A. 63. And, as indicated earlier, any oral agreement to modify a contract must be shown by "clear, unequivocal and convincing evidence, direct or implied." *Reid v. Boyle*, 527 S.E.2d 356, 145 (Va. 2000) (citation omitted).

Plaintiffs contend that the evidence demonstrates that the parties agreed to modify the Note to include Campbell as a "Borrower" personally liable under the Note. They point to Campbell's Delaware testimony in which he stated that he "agreed [he was] personally liable on a promissory note for at least part of the money that was coming in from [Kay]." J.A. 300. Plaintiffs also rely on Campbell's Delaware response to admission requests where

---

[10] Relatedly, Defendants argue that the district court erred by not granting their earlier motion to dismiss Investments and Holdings because Plaintiffs failed to provide evidence that the parties modified the Note to include either of them as lenders under the Note. We reject this argument because Campbell's statements and Associates' accounts payable records provide sufficient evidence that Defendants may be liable to one or both of these entities per an oral modification so as to survive a motion to dismiss.

Campbell explained that he "entered into an agreement to borrow money from Richard Kay and/or his affiliates." J.A. 71. While this evidence supports a conclusion that Campbell is personally liable for *some part* of the money loaned by Kay, it does not provide clear and convincing evidence of an oral modification of the Note such that he would be liable for a particular amount under it. Instead, that evidence could be construed to show that Campbell was to be personally liable for some part of the additional approximately $1.2 million Kay transferred rather than for the $700,000 referenced on the face of the Note.

Moreover, particularly relevant for purposes of summary judgment is that the foregoing is not the only evidence in the record on the issue of Campbell's personal liability. There is also evidence that Campbell was *not* personally liable under the Note. For example, Kay's attorney who drafted the Note testified in the Delaware litigation that it "does not" bind Campbell personally. J.A. 2538. Additionally, at some point before the Delaware litigation, Campbell attempted to pay Kay $2,000, ostensibly as a partial repayment on a loan. In a Delaware deposition, Klein testified that that payment was Campbell's attempt to "plant evidence" so that he could point to it during litigation and say, "see this was a note, I even made a repayment on the [N]ote." J.A. 2115. This testimony implies that Klein—now representing Kay's estate in this litigation—believed that Campbell did not personally owe any money to Kay.

Given the ambiguous and conflicting evidence, we conclude that there is a material dispute of fact as to whether the Note was modified so as to render Campbell personally liable for some or all of the $700,000 it represents. Factual findings and credibility determinations are necessary to determine whether Campbell is personally liable under the

20

Note and those determinations cannot be made at summary judgment. *See Tekmen v. Reliance Standard Life Ins. Co.*, 55 F.4th 951, 959 (4th Cir. 2022) ("Ordinarily in the summary judgment context, the court 'cannot weigh the evidence or make credibility determinations.'" (citation omitted)). Summary judgment was therefore inappropriate as to Campbell on the Note and the district court's decision on this claim as to his personal liability must be vacated.

## IV. The Additional $1.2 Million

Defendants next posit that the district court erred by granting summary judgment to Plaintiffs for the additional $1.2 million Kay transferred to Associates because: (1) Plaintiffs' claims for the additional $1.2 million are time-barred, (2) there is a genuine dispute of material fact regarding whether Defendants are liable for the additional $1.2 million, and (3) there is a genuine dispute of material fact as to the precise amount Plaintiffs lent Defendants above the original $700,000 covered by the Note, which we've simply short-handed as $1.2 million for convenience. We address each contention in turn.

### A. Statute of Limitations

First, Defendants assert that Plaintiffs' claims for the additional $1.2 million loaned are time-barred regardless of the theory of liability, so the district court erred in adjudicating the merits. As a preliminary matter, there are three potentially applicable limitations periods depending on whether the parties' subsequent oral agreement regarding the additional amount loaned was (1) a modification of the Note and due on a specific date, (2) a modification of the Note and due on demand, or (3) a separate oral agreement. But,

21

as will be discussed, we hold that Plaintiffs' claims for the additional $1.2 million are timely regardless of the applicable limitations provision.

If the agreement was a modification of the Note, then its terms would be subject to the same statute of limitations as the Note, meaning that one of two provisions would apply depending on whether the Note is interpreted to be due on a certain date or due on demand. *See infra* Section V (discussing conflicting language in the Note as to its due date in the context of when interest began to accrue on the initial $700,000 loan). If the Note was due on a specific date, then Va. Code Ann. § 8.3A-118(a) applies. It provides that "an action to enforce the obligation of a party to pay a note payable at a definite time must be commenced within six years after the due date." *Id.* Here, under the interpretation of the Note that specifies that payment was due on a specific date, payment was due three months after the Note's execution, which is October 7, 2014. This litigation, filed on September 25, 2020, fell within six years of that date, which would make Plaintiffs' claim regarding the Note timely.

But if a different interpretation of the Note governs and it was due on demand, then Va. Code Ann. § 8.3A-118(b) would apply. That section requires that "an action to enforce the obligation of a party to pay the note must be commenced within six years after the demand." *Id.* Plaintiffs demanded payment on August 28, 2020, and brought this action on September 25, 2020, clearly within the six-year limitations period. Thus, to the extent any additional agreement about the later-transferred $1.2 million was an oral modification of the Note, it would be subject to the same statute of limitations as the Note and would be timely under either applicable six-year limitations provision.

22

However, if the additional money was lent pursuant to a separate oral agreement, Va. Code Ann. § 8.01-246(4) applies, which states that an action founded upon an unwritten contract must be brought within three years. *Id.*[11] Plaintiffs indisputably brought this action more than three years after any alleged oral agreement occurred because any oral agreement must have been made prior to the Delaware litigation, which began in 2015. This litigation commenced more than five years later, making Plaintiffs' claim for the enforcement of a separate oral agreement (Count III) untimely. But that does not end the inquiry because Virginia law permits the revival of untimely claims under certain circumstances.

Plaintiffs correctly assert that their otherwise untimely claims were revived under Va. Code Ann. § 8.01-229(G)(1), which provides:

> If any person against whom a right of action has accrued on any contract, . . . promises, by writing signed by him or his agent, payment of money on such contract, the person to whom the right has accrued may maintain an action for the money so promised, within such number of years after such promise as it might be maintained if such promise were the original cause of action. An acknowledgment in writing, from which a promise of payment may be implied, shall be deemed to be such promise within the meaning of this subsection.

Construing this language, Virginia courts have recognized, "[t]he acknowledgment from which a promise may be implied need not be in any particular form or contain any particular substance; it is sufficient if the debt is acknowledged as an existing one, and a liability or

---

[11] This and other statutory provisions discussed have been amended in the time since the underlying events described, but those amendments do not alter their applicability or the length of the limitations period.

23

willingness to pay it is inferable therefrom." *Nesbit v. Galleher*, 5 S.E.2d 501, 503 (Va. 1939) (citation omitted) (construing predecessor statute).

We agree with Plaintiffs that this provision renders timely their claim that the additional $1.2 million was an enforceable separate oral agreement. Pursuant to a court order entered in the Delaware litigation, Defendants provided Plaintiffs with over 100 documents listing Defendants' current "payables" via emails that were signed by Defendants' attorney.[12] The emails contained financial documents—entitled "Current EagleForce [Associates'] Payables"—consisting of charts that repeatedly listed a "Personal Loan (Campbell Personal)" "payable to" Richard Kay and a "Corporate Loan" "payable to" Holdings. *See, e.g.*, 324–25. These documents are unqualified acknowledgements of indebtedness from which it can be lawfully inferred that Defendants intended to pay these amounts. *See Payable*, *Black's Law Dictionary* (11th ed. 2019) ("[A] sum of money . . . that is to be paid"); *Account Payable, Black's Law Dictionary* (11th ed. 2019) ("An account reflecting a balance owed to a creditor.").[13] Therefore, the emails providing these documents revived Plaintiffs' claims as to the alleged oral agreement. *See Guth*, 334 S.E.2d

---

[12] Defendants question whether their attorney's signature on an email is sufficient to satisfy § 801-229(g)(1)'s signature requirement, but they do not develop or provide any support for this bald assertion. Thus, it is waived. *See Grayson O Co. v. Agadir Int'l LLC*, 856 F.3d 307, 316 (4th Cir. 2017) ("A party waives an argument by failing to present it in its opening brief or by failing to develop its argument—even if its brief takes a passing shot at the issue." (cleaned up)).

[13] The fact that the financial documents were sent pursuant to a court order does not affect the inquiry. *See Guth v. Hamlet Assocs.*, 334 S.E.2d 558, 566 (Va. 1985) ("Section 8.01-229(G) does not distinguish between 'necessary' and 'gratuitous' writings.").

24

at 566 (concluding that the defendants' monthly status reports showing the balance of the principal and interest remaining on the loan were "direct and unqualified admissions of present, subsisting debts from which promises to pay would naturally and irresistibly be implied");[14] *Ford v. Sweet*, 297 S.E.2d 657, 660 (Va. 1982) (concluding that a letter referencing the plaintiff's debt was sufficient to revive the defendant's claim such that granting summary judgment to the plaintiff was appropriate). Because the last of these emails was sent on June 1, 2020, Plaintiffs had three years from *that* date to bring any claims regarding the separate oral agreement. Plaintiffs' claims, brought on September 25, 2020, fall within that period.

Accordingly, regardless of whether the agreement as to the additional approximately $1.2 million is considered a modification of the Note or a separate oral agreement, Plaintiffs' claims to recover that amount are not time-barred.

### B. Liability

On the merits of Plaintiffs' claims related to the additional $1.2 million it is alleged that Kay lent, we conclude that the district court erred by granting summary judgment to

---

[14] Defendants attempt to distinguish *Guth* because the defendants there did not deny that the money given was a loan, as Defendants here do. But this distinction, if accurate, is irrelevant. Va. Code Ann. § 801-229(G)(1) requires only that the defendant acknowledge the loan at some point. It does not state that they have to presently admit to the loan. Indeed, if there is "an unequivocal admission that the debt is still due and unpaid, unaccompanied by any expression, declaration or qualification indicative of an intention not to pay, the state of facts out of which the law implies a promise is then present, and the party is bound by it." *Nesbit*, 5 S.E.2d at 503 (citation omitted). Thus, Defendants' attempt to distinguish *Guth* falls flat.

Plaintiffs for Defendants' liability for the additional $1.2 million because there are genuine disputes of material fact regarding both of Plaintiffs' theories of recovery.

As noted, the district court granted summary judgment to Plaintiffs as to liability without determining whether there was an oral modification of the Note or a separate oral agreement governing the additional $1.2 million. The district court granted summary judgment because it was satisfied that "there was something going on, some agreement." J.A. 3297. But confidence that "there was something going on" is not the standard for granting summary judgment, which must be tethered to uncontested evidence supporting liability under a specific legal claim. *See Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 568 (4th Cir. 2015) ("Summary judgment cannot be granted merely because the court believes that the movant will prevail if the action is tried on the merits." (citation omitted)). In addition to evidence that an agreement existed, there must be clear and convincing uncontested evidence of the terms of that agreement. *See Dean v. Morris*, 756 S.E.2d 430, 433 (Va. 2014) ("Simply because the evidence is clear and convincing to prove that an oral agreement existed . . . does not mean that the evidence is sufficient to prove the terms of that agreement."). "Without specificity of terms, there is no contract." *Id.* And, here, there are multiple disputes of fact regarding the terms of any agreement.

Beginning with the alleged separate oral agreement, there is a dispute of material fact as to who the parties to the agreement are. On the one hand, Campbell stated that he was personally liable for some part of the money Kay loaned and that "there was always a mechanism to make [Kay] whole that [he] was a signatory on, all the way up to even now." J.A. 300. On the other hand, Defendants' accounts payable records show that Campbell

26

was personally liable for only $772,596.84—not the full amount Plaintiffs claim—and it is unclear whether that figure includes the amount of the Note, is part of the additional $1.2 million, or is some part of each. Further, the Note was not signed by Campbell, which contradicts Campbell's statement that he was signatory under the referenced "mechanism to make [Kay] whole." J.A. 300. Moreover, as discussed above, Plaintiffs denied Campbell's personal liability in the Delaware proceedings and even characterized Campbell's attempt to repay part of the loan as "subterfuge." J.A. 2116. At the very least, this demonstrates material disputes of fact regarding whether Campbell was party to any separate agreement and, if so, in what capacity.

A dispute also exists as to whether Associates is a party to the alleged subsequent oral agreement. Associates' accounts payable records indicate only that Associates is liable for $1,147,254.94—$700,000 of which ostensibly relates to the Note. The evidence does not undisputedly establish for purposes of summary judgment therefore that Associates was party to an agreement to repay the additional $1.2 million transferred.

Additionally, there are disputes regarding other terms of any subsequent oral agreement. For example, Plaintiffs suggest that the agreement was subject to the same terms as the original Note because Campbell stated that the Note "was executed with *the anticipation* that any additional monetary contributions from Kay would be subject to the same terms and conditions as the original loan." J.A. 71 (emphasis added). However, Campbell never stated that the parties' "anticipation" was reflected in their actual conduct, leaving the actual terms of the agreement uncertain and in dispute. Therefore, there are

27

multiple material disputes of fact preventing summary judgment on Plaintiffs' claim for the additional approximately $1.2 million under the alleged separate oral agreement.

The material facts are also in dispute regarding Plaintiffs' allegation that the parties orally modified the Note. When the district court asked Plaintiffs to point to anything that demonstrated a modification of the Note, Plaintiffs pointed only to Campbell's statements in the Delaware litigation. But those statements do not indisputably show a modification. For example, Campbell's interrogatory response states broadly that he "entered into an agreement to borrow money from Richard Kay and/or his affiliates." J.A. 71. Campbell neither specified what that agreement entailed nor acknowledged a particular modification. At a minimum, this demonstrates that there is a dispute of material fact as to whether a modification of the Note occurred.

Accordingly, we will vacate the district court's grant of summary judgment and remand to the district court for further proceedings as may be appropriate.[15]

## C. Damages

In addition to there being a dispute about who is liable under the alleged oral modification or agreement, there is a dispute of material fact as to the amount Plaintiffs lent Defendants over and above the original $700,000 covered by the Note (for which we

---

[15] Defendants also argue that the district court's decision was legally inconsistent because there cannot be both an oral modification of the Note and a separate oral agreement covering the additional $1.2 million. We disagree. The parties could have chosen to effectuate their agreement via both an oral modification of the Note and a separate, parallel oral agreement. That the two agreements could be redundant does not necessarily make them legally inconsistent.

have held above that Associates is liable and that a question of fact exists as to additional parties' liability). The district court erred in granting summary judgment when the record evidence contained multiple potential amounts loaned by Plaintiffs and there is a further question as to which of the Plaintiffs is a proper creditor for any specific amount.

As Plaintiffs accurately note, consistent with the district court's finding of a total liability of $1,919,853.78, many of Defendants' financial documents—created after Kay stopped transferring money—state that one or all of Defendants owed Kay and Holdings a total of either $1,919,851.78 *or* $1,919,853.78, with no explanation of the $2 difference. *See, e.g.*, J.A. 313, 318. Under certain circumstances, the district court may not have clearly erred in concluding that a difference of a couple dollars was immaterial. But that wasn't the only record evidence as to the sum lent. Some of Defendants' documents also provide that Defendants owed Plaintiffs thousands of dollars less: for example, some list $1,737,008.16. J.A. 597. Further, Plaintiffs argued before the district court that they actually loaned Defendants tens of thousands of dollars more: $1,949,813.59. J.A. 868.

And while Plaintiffs asserted that Defendants judicially admitted to receiving $1,917,851.78 in this litigation, that assertion is inaccurate. Plaintiffs relied on Defendants' responses to interrogatories that asked Defendants to "[i]dentify each advance of funds that comprise the $770,596.84[] 'Personal Loan (Campbell Personal)' owed to 'Richard Kay Personal'" and the "$1,147,254[.]94 '(Corporate Loan)' owed to [Holding]" that Defendants had listed in their accounts payable. J.A. 3335–36. Defendants responded with charts listing each payment they received. J.A. 3339–43. Under Plaintiffs' theory, the total of the payments included in the chart should amount to $1,917,851.78 (770,596.84 +

1,147,254.94), but the payments shown actually add up to only $1,895,341.78. The interrogatory response therefore provides yet another possible principal amount and contradicts Plaintiffs' contention that Defendants judicially admitted to receiving $1,917,851.78. Thus, there are clear disputes of fact as to the amount of money Plaintiffs loaned Defendants, assuming there is underlying liability.

Because there is evidence supporting different principal amounts and because, as discussed, there are disputes regarding which Plaintiff lent the money and which Defendants are liable for repaying it, a determination of the rightful payees and damages is best left to trial. Accordingly, we vacate the district court's damages determination and remand the issue for determination in a further proceeding.

## V. Interest Accrual Date

On cross-appeal, Plaintiffs argue that the district court erred by determining at the bench trial that interest did not begin to accrue on the money lent until September 3, 2020, five days after Plaintiffs demanded repayment. We begin with a summary of the Note's terms and the relevant district-court proceedings.

As discussed, the Note provides that interest would commence "on the date of default," which occurred if payment of the principal amount was not made five days "after its due date." J.A. 63. The present dispute stems from the fact that there are two possible due dates provided in the Note.

The Note's first possible due date is based on its language stating that the "Borrower" "promise[s] to pay to the order of [Kay], *upon demand*, the principal sum of

Seven Hundred Thousand Dollars." J.A. 63 (emphasis added). Plaintiffs demanded payment on August 28, 2020. Under this interpretation, interest started to accrue on September 3, 2020.

The second possible due date relies on a provision titled "Repayment," in which the Note also declares that "[t]he entire Principal Amount shall be repaid exactly three (3) months after the date" the Note was executed. J.A. 63. Because the Note was executed on July 7, 2014, per the "Repayment" provision, repayment was due on October 7, 2014. If this provision governs, then interest began accruing five days later, on October 12, 2014.

At the outset of this litigation, Plaintiffs' Amended Complaint alleged that "[t]he parties agreed to orally modify the Note's Due Date to make the entire balance of the Note due upon written demand." J.A. 51; *see also* J.A. 57 (stating that the parties "orally and by course of conduct modified the terms of the Note . . . to extend the due date for repayment . . . from a date certain to payment on demand").

After the district court granted summary judgment to Plaintiffs and determined the principal amount, the parties proceeded to trial on the issue of when interest began to accrue. Plaintiffs' sole argument in their briefing prior to the bench trial—notwithstanding their above allegations in the Amended Complaint—was that the Note provided that interest would accrue on October 12, 2014, and the district court should enforce that plain language. Defendants responded that the Note actually stated that payment was due upon demand, and also asserted that Plaintiffs should be held to their concession in their Amended Complaint that the Note was modified such that payment was due upon demand. Defendants did not separately argue that there was a modification or discuss the

31

prerequisites for finding a modification; they simply asked the district court to hold the Plaintiffs to their pleading concession. At trial, both parties focused their arguments on the plain language of the Note, but Defendants again asserted that the court should enforce what they deemed Plaintiffs' concession. For their part, Plaintiffs stated that they withdrew the Amended Complaint modification allegation during discovery after determining that they could not prove that the parties modified the Note's due date.

Soon after the trial began, the district court stated that it would "cut to the chase," J.A. 3459, explaining that it was "looking at" the parties' "course of conduct . . . to determine what was really going on here." J.A. 3460. The district court found that "the note says what it says, but that's not how the parties conducted themselves." J.A. 3461. It explained that Kay denied the existence of the loan in the Delaware litigation and failed to ask Defendants to pay back the loan because "it would have undercut [his] litigation position in Delaware . . . because [he couldn't] have it both ways." J.A. 3460. Additionally, the district court stated, "I think that a plaintiff does have to be held to the allegations that the plaintiff makes in a complaint" because they are "representation[s] to the Court." J.A. 3461. As such, the court concluded that payment was due upon demand and interest began to accrue five days thereafter, on September 3, 2020.

We pause here to explain that on appeal the parties disagree as to what exactly the district court found regarding the due date and their threshold disagreement on that matter affects the framing of their arguments. Plaintiffs believe the district court accepted their reading of the Note—that interest started to accrue three months and five days after the Note was executed, October 12, 2014—but found that the parties subsequently modified

32

the Note as evidenced by their course of conduct. *See* Opening–Response Br. 59 ("Without making any finding that the terms of the Note were ambiguous as to the interest commencement date, the court nonetheless found that the parties' 'course of conduct' overrode the explicit terms of the Note regarding commencement of interest."). Defendants, however, contend that the district court accepted Defendants' reading of the Note and found that the plain language of the Note provided that interest began to accrue five days after Plaintiffs demanded repayment, as confirmed by their course of conduct during the Delaware litigation. *See* Response–Reply Br. 34 ("As the district court correctly found, the parties conducted themselves to give effect to the 'upon demand' language and not the 90-day language."). Neither understanding fully and accurately represents the court's statements.

Our review of the trial transcript reveals that the district court found that the plain language of the Note specified that interest would begin on October 12, 2014, three months and five days after the Note was executed. Despite that finding, the court *also* concluded that Plaintiffs made a judicial admission in their Amended Complaint that the parties agreed to subsequently modify that provision of the Note such that payment was due upon demand and interest would commence five days thereafter. Finding some support in the record for that admission—namely, Kay's complete denial of the loan in the Delaware litigation—the district court held Plaintiffs to it.

With that understanding of the district court's opinion, we turn to the parties' arguments, which have two aspects—(1) the Note's plain language and (2) modification of that language. The parties first contend that their interpretation of the Note governs. To

33

support their position, Plaintiffs rely on the Note's language providing that payment was due "exactly three (3) months" after the Note's execution. J.A. 63. For their part, Defendants point to language that states that payment was due "upon demand." J.A. 63. The Note undoubtedly contains conflicting language about its due date, but we need not determine whose interpretation is correct. In the end, the controlling question is whether Plaintiffs judicially admitted that, assuming their interpretation is correct and payment was due on a specific date, the parties modified the Note to make payment due on demand.

Accordingly, we turn to the parties' arguments regarding whether they modified the Note—which we assume provided that payment was due three months after the Note's execution—to delay interest accrual until Plaintiffs demanded repayment. Plaintiffs, misinterpreting the district court's findings, assert that the district court erred by finding that the parties modified the Note because Defendants did not demonstrate the prerequisites for making such a finding. Defendants do not directly engage the Plaintiffs' modification argument and instead rely on their own misunderstanding of the district court's threshold factual findings to rebut Plaintiffs' arguments. Specifically, they respond that the district court correctly determined that the plain language of the Note provides that interest did not begin to accrue until Plaintiffs demanded repayment.

As noted, Plaintiffs focus their arguments on the requirements for proving a modification. But the district court did not base its decision on such a finding, nor did it undertake any of the salient modification analysis. Moreover, Defendants never sought to prove a modification of the Note, they simply asked the court to enforce Plaintiffs' admission in their Amended Complaint that the parties modified the Note. Consistent with

34

the parties' arguments, the district court chose to enforce the judicial admission. So, that's the decision we review on appeal, not Plaintiffs' immaterial arguments about modification.

"A judicial admission is a representation that is 'conclusive in the case' unless the court allows it to be withdrawn." *Minter v. Wells Fargo Bank, N.A.*, 762 F.3d 339, 347 (4th Cir. 2014) (citation omitted). Judicial admissions generally "go to matters of fact which, otherwise, would require evidentiary proof." *Everett v. Pitt Cnty. Bd. of Educ.*, 788 F.3d 132, 141 (4th Cir. 2015) (citation omitted). They can also consist of "intentional and unambiguous waivers that release the opposing party from its burden to prove the facts necessary to establish the waived conclusion of law." *Id.* (quoting *Minter*, 762 F.3d at 347). "A purported judicial admission is binding only if the statement is 'deliberate, clear, and unambiguous.'" *Id.* (quoting *Minter*, 762 F.3d at 347). "We review the district court's determination as to whether a particular statement constituted a judicial admission for abuse of discretion." *Minter*, 762 F.3d at 347 (cleaned up).

Under these principles, we conclude that the district court did not abuse its discretion by holding Plaintiffs to their judicial admission. Plaintiffs' admission was deliberate, clear, and unambiguous. They stated multiple times in their Amended Complaint that the parties modified the Note such that payment would not be due until demand. *See* J.A. 51, 57. They even asserted that demand was a "condition precedent" for Defendants' liability on the Note. J.A. 56.[16]

---

[16] Although Plaintiffs stated in the district court that they withdrew those allegations, they do not make such an argument on appeal nor do they point to any evidence of such a withdrawal, much less that the district court accepted it.

Of course, the district court could have relieved Plaintiffs of their judicial admission if it found that Plaintiffs' admission was clearly untrue. *See New Amsterdam Cas. Co. v. Waller*, 323 F.2d 20, 24 (4th Cir. 1963) ("[A] court, unquestionably, has the right to relieve a party of his judicial admission if it appears that the admitted fact is clearly untrue and that the party was laboring under a mistake when he made the admission."). But the district court plainly found that the admission was accurate and supported in the record, repeatedly stating that the parties' course of conduct suggested that they had orally modified the Note to make payment due upon demand. In particular, the court relied on the fact that Kay repeatedly denied the existence of the loan and in so doing, could not have simultaneously been collecting interest on it.

And we cannot say that the district court's finding was clearly erroneous because it was a plausible account of the evidence. *See Everett*, 788 F.3d at 145 ("If the district court's account of the evidence is plausible in light of the record viewed in its entirety, then we must affirm." (cleaned up)); *id.* ("A finding is clearly erroneous when, although there is evidence to support it, on the entire evidence the reviewing court is left with the definite and firm conviction that a mistake has been committed." (citation omitted)). As there is no evidence that the district court acted in an arbitrary manner, committed an error of law, or relied on erroneous factual or legal premises, we conclude that the district court did not

36

abuse its discretion in relying on Plaintiffs' judicial admission that the Note was modified to be due on demand.[17]

Accordingly, we affirm the district court's finding that interest did not begin to accrue on the Note until September 3, 2020—five days after Plaintiffs demanded payment. Importantly, this conclusion does not apply to the additional $1.2 million, as the district court must still determine the legal basis for liability in the first instance. Once the district court sorts out how much money Plaintiffs lent outside of the Note, under what terms, who is liable for repaying that money, and to whom they are liable, it can determine whether and when interest began accruing on that amount.

## VI. Conclusion

For the foregoing reasons, we affirm the district court's grant of summary judgment for Associates' liability to Kay under the Note. We similarly affirm the district court's judgment that interest on the Note began to accrue on September 3, 2020 because the due date was modified orally. However, we vacate the district court's grant of summary judgment to Investments and Holdings under the Note and its grant of summary judgment to all Plaintiffs on Campbell's personal liability under the Note and on Defendants' liability for the additional $1.2 million. We also vacate the court's damages determination. We

---

[17] While Plaintiffs argue on appeal that Defendants should not be able to rely on their concession because Defendants denied Plaintiffs' modification allegation in their answer, Plaintiffs failed to bring this argument before the district court. That argument was therefore forfeited, and we need not address it further. *See Lansdowne on the Potomac Homeowners Ass'n, Inc. v. OpenBand at Landsdowne, LLC*, 713 F.3d 187, 206 (4th Cir. 2013).

remand this case to the district court for further proceedings in accordance with this opinion.

*AFFIRMED IN PART, VACATED*
*IN PART, AND REMANDED*